STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ALVIN GREGORY, DEFENDANT-APPELLANT.

Argued December 3, 1974—Decided February 26, 1975.

*Mr. Thomas A. Pavics,* Deputy Public Defender, argued the cause for the appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. David L. Rhoads,* Assistant Prosecutor, argued the cause for the respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

The opinion of the Court was delivered by

JACOBS, J. On December 27, 1971 an undercover officer of the Newark Police Department visited a Newark apartment and purchased a small quantity of heroin which was delivered to him in a single glassine envelope by the defendant. He saw the defendant go into the apartment's bathroom and remove the glassine envelope from a stack of similar envelopes in the medicine cabinet. After his purchase he left the apartment and within moments notified other Newark police officers who returned immediately with him to the apartment and seized the remaining envelopes. They contained enough to yield between four and five hundred decks of heroin.

On April 20, 1972 the defendant was indicted for the single sale to the undercover officer. He was not indicted at that time for possession or possession with intent to distribute the large quantity of heroin taken from the medicine cabinet. Whether this was a deliberate or inadvertent withholding by the Prosecutor does not appear from the record and at oral argument the Assistant Prosecutor said that he was not in

any position to give an explanation. In any event, trial on the indictment for the sale proceeded in regular course and the defendant was convicted. His conviction took place on October 31, 1972 and on January 3, 1973 he was sentenced to State Prison. He appealed to the Appellate Division which affirmed his conviction and we denied certification. 65 *N. J.* 276 (1974).

On December 6, 1972 the Essex County Grand Jury returned two indictments against the defendant, one for possession and the other for possession with intent to distribute the heroin seized on December 27, 1971. At the trial on these indictments the trial judge displayed his wonderment about the State's procedure and expressed the thought that, in fairness to the defendant, all of the charges should have been joined for prosecution in a single proceeding. Nevertheless he permitted the prosecution to continue though he carefully excluded evidence relating to the sale and confined the trial to the heroin seized from the cabinet. On May 24, 1973 verdicts of guilty were returned on both indictments. On June 26, 1973 the defendant received concurrent State prison sentences to run consecutively to the sentence imposed on January 3, 1973 for the sale.

The defendant appealed to the Appellate Division which, with the State's consent, set aside the conviction for possession. However it affirmed the conviction for possession with intent to distribute. In its *per curiam* it found no meritorious basis for the defendant's contention that the second prosecution was barred under principles of double jeopardy and collateral estoppel; it also found that the defendant was procedurally precluded from advancing these principles since he had not made an appropriate objection before trial as required by *R.* 3:10-2 and *R.* 3:23-8(d). See *State v. Currie,* 41 *N. J.* 531, 535 (1964); *State v. Bell,* 55 *N. J.* 239, 248 (1970); *State v. Ebron,* 61 *N. J.* 207, 216-218 (1972). Judge Halpern concurred specially on the ground that the defendant was procedurally barred. While he considered that double jeopardy and collateral estoppel were inapplicable, he

expressed the view that the events which took place on December 27, 1971 should have been classified as a "single criminal episode" and that the charges emanating therefrom should, in all fairness, have been joined in a single prosecution. In the defendant's petition for certification, which we duly granted (66 *N. J.* 308 (1974)), he urged without more that Judge Halpern's view be accepted and that the conviction for possession with intent to distribute be vacated. See *State v. Cormier,* 46 *N. J.* 494, 504 (1966); *State v. Bell, supra,* 55 *N. J.* at 243; *Model Penal Code* § 1.07(2) (Proposed Official Draft 1962); *Final Report of the New Jersey Criminal Law Revision Commission, New Jersey Penal Code* § 2C:1–7(b) (1971); *cf. ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance* § 1.3 (Approved Draft 1968); *Final Report of the National Commission on Reform of Federal Criminal Laws, Proposed New Federal Criminal Code* § 703(2) (1971); 8 *Moore's Federal Practice* ¶ 8.07[3] (2d ed. 1974).

The common law was properly concerned with the protection of the defendant from governmental harassment and oppression by multiple prosecution for the same wrongful conduct. It embodied the principle cherished by all free men that no person may be twice put in jeopardy for the same offense, a principle which fortunately continues undiminished in force and is firmly embodied in our federal constitution. See *Green v. United States,* 355 *U. S.* 184, 78 S. Ct. 221, 2 *L. Ed.* 2d 199 (1957); *Ashe v. Swenson,* 397 *U. S.* 436, 90 S. Ct. 1189, 25 *L. Ed.* 2d 469 (1970). Though the language in our State constitution is somewhat more limited (*State v. Roller,* 29 *N. J.* 339, 344 (1959)), our cases have broadly embraced the common law principle (*State v. Labato,* 7 *N. J.* 137, 143 (1951)) and we of course recognize that the federal constitution's specific guarantee against double jeopardy, along with its collateral estoppel ingredient, is fully applicable in our State. See *Benton v. Maryland,* 395 *U. S.* 784, 89 S. Ct. 2056, 23 *L. Ed.* 2d 707 (1969); *Ashe v. Swenson,*

*supra,* 397 *U. S.* at 445, 90 S. Ct. at 1195, 25 *L. Ed. 2d* at 476.

Though no one currently questions the great worth of the federal constitutional safeguard against double jeopardy, difficulties arise in determining just when multiple prosecution concerns the "same offense" within its contemplation. Several offense-defining tests (Comment, "Twice in Jeopardy," 75 *Yale L. J.* 262, 269 (1965)) have been formulated in the cases but none has proved to be entirely satisfactory. See *State v. Currie, supra,* 41 *N. J.* at 538; *State v. Roller, supra,* 29 *N. J.* at 346; *cf. State v. Thomas,* 61 *N. J.* 314, 319 (1972) ; see also Caraway, "Pervasive Multiple Offense Problems — A Policy Analysis," 1971 *Utah L. Rev.* 105; Comment, "The Double Jeopardy Clause: Refining the Constitutional Proscription Against Successive Criminal Prosecutions," 19 *U. C. L. A. L. Rev.* 804 (1972). In *State v. Hoag,* 21 *N. J.* 496 (1956), *aff'd,* 356 *U. S.* 464, 78 S. Ct. 829, 2 *L. Ed. 2d* 913 (1958), the majority opinion noted that the test then most widely employed in New Jersey was the "same evidence" test; under this, if the evidence necessary to sustain the second charge would have been sufficient to sustain a conviction on the first, then the second charge is barred. 21 *N. J.* at 502; see *State v. Labato, supra,* 7 *N. J.* at 144; *State v. Leibowitz,* 22 *N. J.* 102, 108 (1956).

The same evidence test would not bar the second trial here for the evidence relating to the sale differed from the evidence relating to the possession of the heroin seized from the medicine cabinet.[1] See *State v. Morales,* 127 *N. J. Super.* 1, 4 *(App. Div.* 1974) ; *cf. State v. Booker,* 86 *N. J. Super.* 175, 177–178 *(App. Div.* 1965) ; *State v. Ruiz,* 127 *N. J.*

---

[1]The result would undoubtedly be the same under the so-called "lesser included offense" test *(State v. Thomas,* 61 *N. J.* 314, 319 (1972)). See *State v. Leibowitz,* 22 *N. J.* 102, 107 (1956) ; *State v. Booker,* 86 *N. J. Super.* 175, 177–178 *(App. Div.* 1965) ; *cf. State v. Bailey,* 97 *N. J. Super.* 396, 402–404 *(App. Div.* 1967) ; *State v. Boening,* 63 *N. J. Super.* 588, 593–595 *(App. Div.* 1960).

*Super.* 350, 356 (*App. Div.* 1974); *State v. Williams,* 129 *N. J. Super.* 84, 86 (*App. Div.* 1974).[2] And the subject of collateral estoppel would not arise since the determination at the first trial that the defendant sold the heroin in a single glassine envelope did not bear on the determination that the defendant possessed the heroin seized from the cabinet. *Cf. State v. Cormier, supra,* 46 *N. J.* 494; *Ashe v. Swenson, supra,* 397 *U. S.* 436, 90 S. Ct. 1189, 25 *L. Ed. 2d* 469. However inquiries, which may perhaps be viewed as more troublesome, may arise if instead of the same evidence test, the "same transaction" test found in some of our cases is invoked. See *State v. Currie, supra,* 41 *N. J.* at 537; *State v. Roller, supra,* 29 *N. J.* at 345; *cf.* Brennan, J. in *Ashe v. Swenson, supra,* 397 *U. S.* at 453–454, 90 S. Ct. at 1199–1200, 25 *L. Ed. 2d* at 481 (concurring opinion); Brennan, J. in *Robinson v. Neil,* 409 *U. S.* 505, 511, 93 S. Ct. 876, 879, 35 *L. Ed. 2d* 29, 35 (1973) (concurring opinion).

The same transaction test was designed to suggest that double jeopardy principles should preclude fractionalization where the charged misconduct is all part of the "same criminal transaction". *State v. Roller, supra,* 29 *N. J.* at 345. But in operation it has not been fully acceptable since, as noted in 75 *Yale L. J., supra* at 277, "transaction" is a shapeless term and its utility depends on the way it is defined and applied. See Lugar, "Criminal Law, Double Jeopardy and Res Judicata," 39 *Iowa L. Rev.* 317, 323–329 (1954); Note, "Double Jeopardy and the Concept of Identity of Offenses, 7 *Brooklyn L. Rev.* 79, 83–87 (1937); see also *State v. Louden,* 21 *N. J. Super.* 497 (*App. Div.* 1952); *State v. Boening,* 63 *N. J. Super.* 588 (*App. Div.* 1960); *State v. Cox,* 101 *N. J. Super.* 470 (*App. Div.* 1968), certif. denied, 53 *N. J.* 510 (1969).

---

[2] In *State v. Ruiz,* 127 *N. J. Super.* 350 (*App. Div.* 1974) and *State v. Williams,* 129 *N. J. Super.* 84 (*App. Div.* 1974), there were dissents and appeals were duly taken as of right to this Court. The appeals have been argued and are awaiting determination.

In *Louden* the defendants broke into a garage, stole some cash from the office and stole an automobile from the adjoining shop. They were convicted on separate charges of (1) larceny of the automobile and (2) breaking, entering and larceny of the cash. They received consecutive sentences. The court held there were two separate offenses and no infringement of double jeopardy principles. 21 *N. J. Super.* at 498. In *Boening* the defendant first struck the victim and then robbed him. The court held that (1) the assault and (2) the robbery were separate offenses and that there was not "an identity of criminal transaction." 63 *N. J. Super.* at 595. In *Cox* the defendant committed a robbery and in the course of his escape assaulted a police officer, kidnapped a victim and stole an automobile. He was charged with and convicted of separate offenses and received consecutive sentences. The court held that his offenses did not constitute "a single continuous transaction" and that his separate convictions and sentences did not infringe on double jeopardy principles. 101 *N. J. Super.* at 475–476. The foregoing cases are cited simply to illustrate how the broad terminology, "same transaction", may be narrowed in application and to suggest its inadequacy without more as a double jeopardy test. See *State v. Currie, supra,* 41 *N. J.* at 538; *State v. Roller, supra,* 29 *N. J.* at 345–346; *cf. State v. Hoag, supra,* 21 *N. J.* 496; *Ashe v. Swenson, supra,* 397 *U. S.* 436, 90 S. Ct. 1189, 25 *L. Ed.* 2d 469.[3]

In *State v. Roller, supra,* the defendant was brought to trial on various false pretense charges. The trial judge dis-

---

[3] We need not here concern ourselves with any issue as to whether multiple convictions and consecutive sentences at a single trial involve only matters of statutory intent and interpretation (*Gore v. United States,* 357 *U. S.* 386, 78 S. Ct. 1280, 2 *L. Ed.* 2d 1405 (1958)) rather than constitutional double jeopardy principles (*Ex Parte Lange,* 18 *Wall.* 163, 21 *L. Ed.* 872 (1874)). See *Commonwealth v. Campana,* 452 Pa. 233, 304 A. 2d 432, 435–436, *vacated and remanded* 414 *U. S.* 808, 94 S. Ct. 73, 38 *L. Ed.* 2d 44 (1973), *aff'd,* 455 Pa. 622, 314 A. 2d 854 (1974).

missed some of the charges and the jury was unable to agree on the rest. The defendant contended that since all of the charges covered much the same ground, double jeopardy precluded a further trial on the charges which had not been dismissed. Stressing the total absence of any harassment or oppression, we flatly rejected his contention. In the course of our opinion we pointed out that neither the same evidence test nor the same transaction test had worked with complete satisfaction and that while the court had been seeking the elusive ideal test it had ·in each instance endeavored fairly to protect the State's vital interest in bringing the guilty to justice while at the same time protecting the accused from multiple trials and punishment when in substance there had been but a single wrongdoing. 29 *N. J.* at 346. In *State v. Currie, supra,* we noted the futility of the efforts extended towards the formulation of a single legal test to operate absolutely and inflexibly throughout the field of double jeopardy; and we stressed that in applying the prohibition against double jeopardy the emphasis should be on underlying policies rather than technisms and that the primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals. 41 *N. J.* at 539. See *State v. Berry,* 41 *N. J.* 547, 551 (1964); *State v. Louf,* 126 *N. J. Super.* 321, 338 *(App. Div.),* aff'd *in part and* rev'd *in part,* 64 *N. J.* 172 (1973); *State v. Ferrante,* 111 *N. J. Super.* 299, 303 *(App. Div.* 1970).

Here the heroin that was possessed by the defendant both before and after the sale of the single envelope was independent of the sale, and the possession would not be the same transaction as the sale within the holdings in *State v. Cox, supra,* 101 *N. J. Super.* 470; *State v. Boening, supra,* 63 *N. J. Super.* 588; *State v. Louden, supra,* 21 *N. J. Super.* 497. Cf. *State v. Booker, supra,* 86 *N. J. Super.* 175; *State v. Ruiz, supra,* 127 *N. J. Super.* 350; *State v. Williams, supra,* 129 *N. J. Super.* 84. The defendant may find little support from the same transaction test as narrowly ap-

plied in the aforecited cases but may find greater support from *State v. Currie, supra,* 41 *N. J.* 531 where the stress was laid not on the various tests but on the underlying consideration of fairness and reasonable expectations. 41 *N. J.* at 539.

When the defendant was originally indicted both he and the State were fully aware that on December 27 there had been a sale by the defendant of the small quantity of heroin and possession by him of the larger quantity. When he was arrested on December 27 and was thereafter brought to trial on October 30 his reasonable expectations were that there would be no further prosecution on the basis of his possession and sale on December 27. Fairness dictated that if the State contemplated any additional prosecution based on the December 27 possession and sale it would join it with the original prosecution rather than withhold mention of it until after completion of the trial. Such withholding and later prosecution smacks of harassment and oppression and should be barred.

For present purposes we need not rest on constitutional grounds for the just result we seek may readily be attained by our exercise of the broad administrative and procedural powers vested in us by our State Constitution. *N. J. Const.,* Art. VI, § II, par. 3 (1947); *Donaldson v. Bd. of Ed. of No. Wildwood,* 65 *N. J.* 236, 243 (1974); *Monks v. N. J. State Parole Board,* 58 *N. J.* 238, 248–249 (1971); *State v. Kunz,* 55 *N. J.* 128, 144 (1969). In the civil field we have long required that the entire controversy be disposed of in a single proceeding and we have not hesitated to bar a second proceeding by a party who unfairly withheld a fragment of his claim for a later proceeding. See *Falcone v. Middlesex County Med. Soc.,* 47 *N. J.* 92 (1966). There would seem to be even more reason for this approach in the criminal field (*cf. State v. Cooper,* 13 *N. J. L.* 361, 375–376 (*Sup. Ct.* 1833); Brennan, J. in *Ashe v. Swenson, supra,* 397 *U. S.* at 456–457, 90 S. Ct. at 1200–1201, 25 *L. Ed. 2d* at 482–483) and in recent years there has been noticeable

movement in that direction, stimulated in considerable part by recommendations of the American Law Institute. See *Model Penal Code, supra,* § 1.07(2); *cf. New Jersey Penal Code, supra,* § 2C:1–7(b); *Commonwealth v. Campana,* 455 *Pa.* 622, 314 *A.* 2d 854 (1974); *People v. White,* 390 *Mich.* 245, 212 *N. W.* 2d 222 (1973); *State v. Brown,* 262 *Ore.* 442, 497 *P.* 2d 1191 (1972); see also *State v. Cormier, supra,* 46 *N. J.* at 504; *State v. Bell, supra,* 55 *N. J.* at 243.

Section 1.07(2) of the American Law Institute's *Model Penal Code* provides that a defendant shall not be subject to separate trials for multiple offenses "based on the same conduct or arising from the same criminal episode" where the prosecuting attorney knows of the offenses when he begins the first trial and the offenses are within the jurisdiction of the court.[4] Section 1.07(3) of the *Code* provides that when "justice so requires" the court may on application by the prosecuting attorney or the defendant, order that any charge be tried separately. The proposed *New Jersey Penal Code* embodies provisions which are largely patterned after those contained in the *Model Penal Code.* See § 2C:1–7(b) and commentary thereon at 20–26. Legislation proposed by the National Commission on Reform of Federal Criminal Laws provides that, unless otherwise ordered by the court to promote justice, the defendant shall not be subject to separate trials for multiple offenses known to the prosecuting attorney and

---

[4]The *ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance* § 1.3 (Approved Draft 1968) contemplates, as does the *Model Penal Code*, that the prosecuting attorney will present all of the known charges he intends to prosecute within the court's jurisdiction, based on the same conduct or arising from the same criminal episode. Unlike the *Code*, it does not require procedural joinder of the charges by the prosecuting attorney but places the burden on the defendant to move for joinder if he so desires. See *Commonwealth v. Campana,* 452 *Pa.* 233, 304 *A.* 2d 432, 447–449 (dissenting opinion), *vacated and remanded,* 414 *U. S.* 808, 94 S. Ct. 73, 38 *L. Ed.* 2d 44 (1973), *aff'd,* 455 Pa. 622, 314 *A.* 2d 854 (1974).

within the court's jurisdiction, where the offenses are based on the same conduct or arise from the same criminal episode or are based on a series of acts or omissions motivated by a common purpose or plan and which result in the repeated commission of the same offense or affect the same person or persons or their property. See *Final Report of the National Commission on Reform of Federal Criminal Laws, supra,* § 703(2).

Although the *Model Penal Code* cautiously refrains from any inflexible definition of the "same criminal episode" it leaves no room for doubt that it contemplates compulsory joinder in situations such as those presented in the cited cases, namely, *State v. Cox, supra,* 101 *N. J. Super.* 470; *State v. Boening, supra,* 63 *N. J. Super.* 588; *State v. Louden, supra,* 21 *N. J. Super.* 497, where multiple offenses joined at a single trial were viewed as separate acts rather than as part and parcel of the "same transaction." In *Commonwealth v. Campana,* 452 *Pa.* 233, 304 *A. 2d* 432, 438–439, *vacated and remanded,* 414 *U. S.* 808, 94 S. Ct. 73, 38 *L. Ed. 2d* 44 (1973), *aff'd,* 455 *Pa.* 622, 314 *A. 2d* 854 (1974), Justice Roberts, while describing the compulsory joinder requirement in § 1.07(2) of the *Model Penal Code* as "[b]y far the most efficient and enthusiastically received proposal for preventing successive prosecutions", also cited the broad understanding of "the same criminal episode" expressed in the commentary appended to § 1.3(a) of the *ABA Project on Minimum Standards for Criminal Justice, supra.* There "episode" is defined (at 20–21) to mean "an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series." 304 A. 2d at 439; 1974 *Annual Survey of American Law* 429; *New Jersey Penal Code, supra,* commentary at 21.

In *State v. Cormier, supra,* 46 *N. J.* 494 the defendant was acquitted on a conspiracy charge but was later tried and convicted on the substantive charges. We determined that the crucial factual issue had been found adversely to the State

at the first trial and that the State was collaterally estopped from relitigating it in a second trial. In the course of our opinion we cited the *Model Penal Code* along with our comment that rules dictating joinder of all known offenses based on the same conduct or arising from the same criminal episode had been proposed and adopted elsewhere and that "[t]here is much to be said in favor of compulsory joinder". 46 *N. J.* at 504.

In *State v. Bell, supra,* 55 *N. J.* 239, a tavern was broken into and within forty minutes the defendants were arrested while in possession of articles stolen from the tavern. They were convicted of receiving stolen goods and were later tried and convicted of breaking and entering the tavern with intent to steal. This Court entertained the view that the later conviction indicating that they had themselves committed the theft was inconsistent with the earlier one establishing that they had merely received the stolen goods from someone else and that therefore the later conviction could not stand. In his opinion for the Court Justice Proctor pointed out that the problems in the case could readily have been avoided in practical fashion if the State had tried all the related offenses at one trial as it should have; and citing § 1.07(2) of the *Model Penal Code* he expressed the thought that many of the difficulties in the double jeopardy field "would be eliminated if all charges against a defendant were disposed of in a single trial rather than by piecemeal litigation." 55 *N. J.* at 243.

This Court in *State v. Cormier, supra,* 46 *N. J.* 494, noted that our Court rules "thus far" omit provision for compulsory joinder of known offenses based on the same conduct or arising from the same criminal episode. 46 *N. J.* at 504. We are satisfied that the time for the adoption of such provision is well due and that this case is an appropriate vehicle for such action. *Cf. State v. Kunz, supra,* 55 *N. J.* at 144; *State v. Wingler,* 25 *N. J.* 161, 179 (1957). Compulsory joinder, with power in the court to sever when justice so requires, will not only tend to satisfy the considerations of fairness and reasonable expectations stressed in *State v. Currie,*

*supra,* 41 *N. J.* at 539 (*cf. Petite v. United States,* 361 *U. S.* 529, 80 S. Ct. 450, 4 *L. Ed. 2d* 490 (1960)), but will also promote the considerations of "justice, economy, and convenience" stressed by Brennan, J. in *Ashe v. Swenson, supra,* 397 *U. S.* at 454, 90 S. Ct. at 1199, 25 *L. Ed. 2d* at 481. It has been suggested that, in addition, it will tend to promote "consistent and rational sentencing" since one sentencing judge will evaluate all the relevant conduct. See Comment, *supra,* 75 *Yale L. J.* at 296 n. 144; *cf. Benton v. Maryland, supra,* 395 *U. S.* at 788–791, 89 S. Ct. at 2059–2061, 23 *L. Ed. 2d* at 712–714; *State v. Mills,* 51 *N. J.* 277, 289–290, *cert.* denied, 393 *U. S.* 832, 89 S. Ct. 105, 21 *L. Ed. 2d* 104 (1968).

 The preparation of the precise contours and details of the compulsory joinder rule may well be left to our Criminal Practice Committee for ultimate consideration and promulgation by us in regular course. In the meantime sections 1.07 (2) and 1.07(3) of the *Model Penal Code* may be considered in full force and effect in our State. Under those sections the State was barred from subjecting the defendant Gregory to the second separate trial. Upon any fair view of the circumstances the defendant's multiple offenses of (1) distribution and (2) possession with intent to distribute were based on the same conduct or arose from the same criminal episode within the contemplation of section 1.07(2). On December 27 the defendant had possession of all of the heroin in the bathroom cabinet when the undercover officer came to his apartment. The officer saw the heroin in the cabinet and purchased a small quantity in a glassine envelope which was taken therefrom. Though he then left the apartment he returned almost immediately with other officers to seize the remaining heroin. While the sale of the small quantity and the continuing possession of the larger quantity may under our case law be viewed here as separate offenses, surely the occurrences in their entirety at the defendant's apartment on December 27 involved the same conduct or the same criminal episode for purposes of procedural joinder.

The Prosecutor was fully aware of all of the pertinent circumstances before the first indictment was returned. He had broad discretionary powers (*In re Investigation Regarding Ringwood Fact Finding Comm.*, 65 *N. J.* 512, 516 (1974)) and in the exercise of his discretion he could have sought indictment for (1) the sale or (2) the possession with intent to distribute, or both. He sought and obtained indictment only for the sale and not until after trial thereon was completed did he seek and obtain indictment for the possession with intent to distribute. This course was patently unfair to the defendant and was in clear conflict with the goals and terms of § 1.07(2). While that section was not then in effect we consider it only just and proper that the defendant here be given its full benefits; and of course he should not be procedurally barred because of his failure to make appropriate objection before trial. See *State v. Bell, supra,* 55 *N. J.* at 248; *cf. State v. Currie, supra,* 41 *N. J.* at 535; *City of Newark v. Pulverman,* 12 *N. J.* 105, 108 (1953). The judgment of the Appellate Division, insofar as it sustained the defendant's conviction for possession with intent to distribute, is hereby:

Reversed.

*For reversal*—Chief Justice HUGHES, Justices JACOBS, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge COLLESTER—7.

*For affirmance*—None.