Commonwealth *v.* Campana, Appellant.
Commonwealth *v.* Doe et al., Appellants.
Commonwealth *v.* King, Appellant.

624

ADDENDUM OPINION PER CURIAM, January 24, 1974: On May 4, 1973, this Court reversed the several judgments of sentence in *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973).[1] Three opinions were filed in support of our judgments, none of which obtained the approval of a majority of this Court.[2]

Subsequently a petition for writ of certiorari was submitted to the United States Supreme Court. On October 9, 1973, the Supreme Court granted the petition for writ of certiorari, vacated this Court's judgments, and remanded the causes in *Campana* to us to consider whether our judgments were based on federal or state grounds. *Pennsylvania v. Campana*, 414 U.S. 808, 94 S. Ct. 73 (1973). Accordingly, we file this per curiam addendum opinion.

There are, of course, indications in some of the opinions supporting our judgments that a basis for the judgments was to be found in federal constitutional problems. However, there are also separate reasons advanced for the result that do not stand on a view of federal constitutional requirements.

Our supervisory power over state criminal proceedings is broad,[3] and this Court need not, as a matter of state law, limit its decision to the minimum requirements of federal constitutional law. E.g., *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971);[4]

---

[1] We reversed the judgments of sentence at No. 151 September Term, 1968, Lycoming County, No. 255 September Sessions, 1968, Berks County, and No. 520 April Sessions, 1969, Allegheny County, and affirmed the judgment of sentence at No. 325 October Sessions, 1968, Allegheny County.

[2] Three justices joined the plurality opinion. Three justices concurred in the result, with two justices joining in one concurring opinion, and another justice filing a separate concurring opinion. A dissenting opinion was also filed.

[3] See Pa. Const. art V, § 10.

[4] This Court in *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971), went beyond the minimum standard required by the federal constitution and held as a matter of state law that "in

*Commonwealth v. Blackman,* 446 Pa. 61, 285 A.2d 521 (1971) ;[5] *Commonwealth v. Ware,* 446 Pa. 52, 284 A. 2d 700 (1971), order granting cert. vacated and cert. denied, 406 U.S. 910, 92 S. Ct. 1606 (1972) ;[6] *Commonwealth v. McIntyre,* 417 Pa. 415, 208 A.2d 257 (1965).[7]

---

Pennsylvania a second prosecution and imposition of punishment for the same offense will not be permitted unless it appears from the record that the interests of the Commonwealth of Pennsylvania and the jurisdiction which initially prosecuted and imposed punishment are substantially different." *Id.* at 171-72, 286 A.2d at 642 (footnote omitted).

[5] In *Commonwealth v. Blackman,* 446 Pa. 61, 285 A.2d 521 (1971), we were asked to reconsider, in light of *North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160 (1970), our earlier holding in *Commonwealth v. Roundtree,* 440 Pa. 199, 269 A.2d 709 (1970). *Roundtree* held that a defendant's plea of guilty was not to be accepted as a knowing and voluntary act if the defendant also testifies to what is in effect a complete defense of the crime charged. We declined in *Blackman* to reconsider our earlier decision, because we believed that "[a]lthough our statement in Roundtree may not be constitutionally required, we are still convinced of its wisdom." *Blackman,* supra at 64, 285 A.2d at 522.

[6] The issue in *Commonwealth v. Ware,* 446 Pa. 52, 284 A.2d 700 (1971), concerned the applicability of *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966). In reaching our result we looked to the United States Supreme Court's decision in *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966), which held that *Miranda* applied to cases in which the trial began after the date of decision in *Miranda.* Our holding in *Ware* stated that "we are in agreement with the rationale of *Johnson,* and . . . affirm it as a matter of state law." *Ware,* supra at 58, 284 A.2d at 703.

The United States Supreme Court granted a writ of certiorari in *Ware* on March 20, 1972. *Pennsylvania v. Ware,* 405 U.S. 987, 92 S. Ct. 1254 (1972). On April 24, 1972, the Supreme Court vacated its earlier order and denied the petition for a writ of certiorari, "it appearing that the judgment below rests upon an adequate state ground." *Pennsylvania v. Ware,* 406 U.S. 910, 92 S. Ct. 1606 (1972).

[7] The appellant in *Commonwealth v. McIntyre,* 417 Pa. 415, 208 A.2d 257 (1965), was granted a new trial because the Commonwealth employed for impeachment purposes the conviction records of four burglaries committed subsequent to the crime for which he was being tried. "We [did] not decide the claim on constitution-

See *Commonwealth v. Willman,* 434 Pa. 489, 491, 255 A.2d 534, 535 (1969). Compare *Santobello v. New York,* 404 U.S. 257, 92 S. Ct. 495 (1971) (decided Dec. 20, 1971), with *Commonwealth v. Alvarado,* 442 Pa. 516, 276 A.2d 526 (1971) (decided Apr. 22, 1971).

This Court views our May 4, 1973 judgments in *Campana* as state law determinations pursuant to our supervisory powers.

The result this Court reached in *Campana* is entirely in harmony with section 110 of our Crimes Code, which became effective shortly after our decision and is now in effect. 18 Pa. S. §110 (1973) (effective June 6, 1973).[8] Section 110 bars in described circumstances

---

al grounds. It [was] enough that we [were] led to preclude the practice under our supervisory power . . . ." Id. at 419, 208 A.2d at 259.

[8] Section 110 of our Crimes Code sets forth the following standards:

"When prosecution barred by former prosecution for different offense

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:

(i) any offense of which the defendant could have been convicted on the first prosecution;

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense; or

(iii) the same conduct, unless:

(A) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

subsequent state prosecutions for "any offense based

(B) the second offense was not consummated when the former trial began.

(2) The former prosecution was terminated, after the indictment was found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense.

(3) The former prosecution was improperly terminated, as improper termination is defined in Section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for an offense of which the defendant could have been convicted had the former prosecution not been improperly terminated." 18 Pa. S. § 110 (1973).

The definitions referred to in section 110 are provided by section 109.

"When prosecution barred by former prosecution for the same offense

When a prosecution is for a violation of the same provision of the statutes and is based upon the same facts as a former prosecution, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal. There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of fact or in a determination that there was insufficient evidence to warrant a conviction. A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense, although the conviction is subsequently set aside.

(2) The former prosecution was terminated, after the indictment had been found, by a final order or judgment for the defendant, which has not been set aside, reversed, or vacated and which necessarily required a determination inconsistent with a fact or a legal proposition that must be established for conviction of the offense.

(3) The former prosecution resulted in a conviction. There is a conviction if the prosecution resulted in a judgment of conviction which has not been reversed or vacated, a verdict of guilty which has not been set aside and which is capable of supporting a judgment, or a plea of guilty accepted by the court. In the latter two cases failure to enter judgment must be for a reason other than a motion of the defendant.

on the same conduct or arising from the same criminal episode . . . ." *Id. at* § 110 (1) (ii).

(4) The former prosecution was improperly terminated after the first witness was sworn but before a verdict, or after a plea of guilty was accepted by the court." Id. § 109.

CONCURRING OPINION BY MR. JUSTICE NIX:

In my concurring opinion in *Commonwealth v. Campana,* 452 Pa. 233, 304 A. 2d 432 (1973), I was of the opinion that the result reached by the Court could not be justified by the Double Jeopardy Clauses of either the State or Federal Constitution.[1] However, I expressed the view that we should, under our supervisory powers, adopt the rule advocated by Mr. Justice ROBERTS in his plurality opinion. My opinion remains unaltered.

[1] U. S. Const., Amendment V; Pa. Const., Art. I, Sec. 10.

DISSENTING OPINION BY MR. JUSTICE POMEROY:

As the sole dissenter to the decision of the Court entered on May 4, 1973, in these cases, *Commonwealth v. Campana,* 452 Pa. 233, 304 A. 2d 432 (1973), it is with diffidence that I presume again to disagree with the Court, this time in its statement as to the basis of the May 4th decision. The addendum opinion now filed, however, is so much at odds with what was said last year that I am obliged to register my dissent.

In the former plurality opinion by Mr. Justice ROBERTS, joined by Justices O'BRIEN and MANDERINO, the holding was thus stated: "We hold that *all* charges resulting from the criminal 'episode' of each appellant should have been consolidated at one trial, and, consequently the second prosecution violated the Double Jeopardy Clause of the Fifth Amendment." 452 Pa. at 239-40. (Footnote omitted.) There followed a lengthy exposition of that clause in light of decisions of the

Supreme Court of the United States and other authorities. The discussion mentioned the comparable clause contained in Art. 1, Section 10 of the Pennsylvania Constitution, and cast some doubt (without resolving it) on the limitation of that clause to "capital offenses". 452 Pa. at 243. After discussion of the relative merits and demerits of the so-called "same evidence" test and "same transaction" test used in various jurisdictions and advocated, pro and con, by various secondary authorities to determine whether a second prosecution is for the "same offense", the Court reiterated its conclusion: "We hold . . . that the Double Jeopardy Clause requires a prosecutor to bring, in a single proceeding, all known charges against a defendant arising from a 'single criminal episode'." (Footnote omitted.) *Id.* at 252-53.

In the concurring opinion of Mr. Justice EAGEN, joined by Mr. Chief Justice JONES, the issue before the Court was squarely put: "What does the constitutional phrase 'same offense' mean in the context of the Double Jeopardy Clause of the Fifth Amendment, as applied to the states through the Fourteenth Amendment?" 452 Pa. at 256. The ensuing discussion in this concurring opinion was directed entirely to consideration of that question, leading Mr. Justice EAGEN to conclude that, since the crimes charged in the second prosecutions were not intended to prevent a substantially different harm or evil than those charged in the first prosecutions, "these crimes were the 'same offense' in the constitutional sense, and, hence, the second prosecutions constituted double jeopardy". 452 Pa. at 260. (Concurring opinion of Mr. Justice EAGEN.)

Mr. Justice NIX filed an opinion in which he concurred with the result reached, but on non-constitutional grounds. Analyzing the opinion of the Supreme Court of the United States in *Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469 (1970), he concluded that

the result reached in the plurality opinion "has no basis in the policy of the Double Jeopardy Clause". 452 Pa. at 262. (Concurring opinion of Mr. Justice NIX.)

The dissenting opinion of this writer was based largely on what was believed to be a misconception of the plurality opinion that the Double Jeopardy Clause of the Federal Constitution, properly interpreted, compelled or supported its holding: "[T]he issue which the majority has today framed and answered in the affirmative—whether the Federal Constitution contains a rule requiring joinder of admittedly separate offenses arising from the 'same criminal episode'—has already been answered for us in the negative. Ciucci v. Illinois, 356 U.S. 571, 2 L. Ed. 2d 983 (1958). The Court's failure to recognize this fact, in my view, bids fair to disturb in a serious manner the allocation of power as between our state courts and the United States Supreme Court." 452 Pa. at 268-69. (Dissenting opinion of Mr. Justice POMEROY.) (Footnote omitted.) The dissenting opinion went on to indicate approval, as a rule of criminal procedure, of the approach proposed by the American Bar Association Project on Minimum Standards for Criminal Justice (Standards Relating to Joinder and Severance, §1.3) (Approved Draft 1968), and made note, as another non-constitutional approach to the problem, of the compulsory joinder provisions contained in Pennsylvania's new Crime's Code, Act of Dec. 6, 1972, P. L. 1482, No. 334, 18 Pa. S. §110, effective June 6, 1973.

From the foregoing cursory review of the opinions filed in *Campana*, it is manifest that every member of this Court considered that the plurality opinion and the concurring opinion of Mr. Justice EAGEN, subscribed to in total by five justices, were addressed to and based upon the Double Jeopardy Clause of the Fifth Amendment of the Constitution of the United States.

The United States Supreme Court, having granted certiorari and having vacated our judgments, has now directed us *"to consider whether [our] judgments are based on federal or state constitutional grounds, or both".* (My emphasis.) By its per curiam addendum, however, this Court, which on May 4, 1973 was so clearly of the view that the Double Jeopardy Clause of the Fifth Amendment embodied the rule of compulsory joinder announced in *Campana,* has retreated altogether from constitutional adjudication, either federal or state, and instead has announced in a most conclusory fashion that the *Campana* cases involve "state law determinations pursuant to our supervisory powers".

To my mind the above statement is evasive and equivocal, and I cannot subscribe to it. It represents a refusal to accept accountability for our decisions on federal constitutional law and an unwillingness to leave to the highest federal court the last word on questions of such law.[1] If this Court sees fit to base a holding in a case upon its interpretation of the Federal Constitution, as it clearly did in *Campana,* then it must tolerate review of such a decision by the Supreme Court of the United States. It will not do, when our decision is under challenge, to announce that we were merely exercising a supervisory power. In short, since the May 4, 1973 opinions of Justices Roberts and Eagen (in which a majority of the Court joined) are plainly based on the Federal Constitution's Double Jeopardy Clause, we should not hesitate to say so.

Today's addendum opinion, however, should have one result which I believe to be salutary. By its retreat

---

[1] The effect of the Court's statement will presumably be to cause the Supreme Court of the United States to reinstate our former judgments and to vacate the writ as improvidently granted. *Murdock v. City of Memphis,* 87 U.S. (20 Wall.) 590 (1874).

to supervisory power grounds and by its refusal now to say that either the Federal Constitution or the Pennsylvania Constitution requires the result in *Campana,* the majority puts to rest a primary concern which I had with the earlier opinions—that this new Fifth Amendment right might be retrospectively applied. Surely an opinion which is based on "state law determinations pursuant to our supervisory powers" and which merely overruled the then existing Pennsylvania Rule of Criminal Procedure 219 will not require any degree of retroactivity. It is true, of course, that the original opinions in *Campana* still exist in the published reports and continue to declare a clearly-stated, albeit incorrect, principle of federal constitutional law. I assume, however, that in view of its disinclination to permit the United States Supreme Court to pass upon that decision, this Court cannot justifiably hereafter take the position that the rule of compulsory joinder set forth in *Campana* is compelled by the Federal Constitution. If this is correct, the problems of retroactivity will evaporate.